852 So.2d 1162 (2003)
STATE of Louisiana, Appellee,
v.
Jacques D. McCALL, Appellant.
No. 37,442-KA.
Court of Appeal of Louisiana, Second Circuit.
August 20, 2003.
*1163 Edward R. Greenlee, Baton Rouge, Peggy J. Sullivan, Monroe, for Appellant.
Jerry L. Jones, District Attorney, Geary S. Aycock, Assistant District Attorney, for Appellee.
Before WILLIAMS, GASKINS and TRAYLOR (Pro Tempore), JJ.
WILLIAMS, J.
The defendant, Jacques McCall, was convicted of one count of armed robbery, a violation of LSA-R.S. 14:64. He was sentenced to serve fifteen years at hard labor without the benefit of probation, parole or suspension of sentence. The defendant now appeals. For the following reasons, we affirm.

FACTS
On July 23, 2000, Jerry Daniel Froust and his wife, Sandra Froust, were walking along a residential street in their neighborhood in West Monroe, Louisiana. The couple was on their way to a convenience store when they were approached by three black males and one white male. One of the men held a gun to Mr. Froust's head and demanded money. As a second man put a gun to Mr. Froust's back, a third man reached in Mr. Froust's pocket and took approximately $300 in cash.
Sandra Froust backed away from the scene and displayed a knife that she carried for protection. She then unsuccessfully sought help by knocking on a door of a nearby residence. The four men fled the scene and the couple began walking toward the store to call the police. The couple then saw the man who had put a gun to the victim's head come out of a house. When the men began to throw sticks and rocks toward them, the couple began running toward the convenience store.
A short time later, Detective Jackie Gilbert of the West Monroe Police Department *1164 arrived at the store. The couple described one of the gunmen's clothing as a red baseball-type jersey and baggy jeans. The couple also identified the residence where they had seen the gunman after the robbery. The next day, a photographic lineup was conducted, and both Mr. Froust and his wife independently identified the defendant as one of the individuals who had robbed Mr. Froust at gunpoint. Police officers arrested defendant at the residence that the couple had earlier identified. They also seized a maroon Cardinals baseball jersey that was lying on the floor in the room where they had arrested the defendant.
When Detective Gilbert questioned the defendant about the armed robbery, he did not deny the couple's allegations. Rather, when the officer asked the defendant about his accomplices, he told them the identity and location of the white male accomplice. This individual was also arrested in connection with the crime.
After a jury trial, the defendant was found guilty as charged. The trial court sentenced the defendant to serve fifteen years at hard labor, without the benefit of parole, probation or suspension of sentence. The court denied a timely motion to reconsider sentence. Defendant now appeals.

DISCUSSION

Sufficiency of the Evidence:
The defendant contends the evidence was insufficient to support his conviction for armed robbery. He argues that because the victim and his wife gave conflicting versions of the events of the robbery, their inconsistent testimony should have been discounted by the jury.
The question of the sufficiency of the evidence is properly raised by a motion for post-verdict judgment of acquittal. LSA-C.Cr.P. art. 821; State v. Gay, 29,434 (La. App.2d Cir.06/18/97), 697 So.2d 642. Although the record shows that the defendant did not file a motion for post-verdict judgment of acquittal, this court may still consider his sufficiency of the evidence argument. State v. Courtney, 30,629, 30,630 (La.App.2d Cir.5/13/98), 714 So.2d 176.
When a defendant challenges the sufficiency of the evidence to convict an acquittal should be granted if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court must defer to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, supra.
The elements of the crime of armed robbery are found in LSA-R.S. 14:64, which reads in part:
Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
An examination of the evidence of record shows that the jury could have easily *1165 reconciled the differences in the testimony given by the victim and his wife. The first issue, the number of assailants, was explained by the victim's testimony that he only mentioned three men on direct examination because he could not describe the fourth assailant and he did not identify him for the police. Since only three men were involved in the actual robbery, i.e., two men were holding guns on the victim and the other man was taking money from his pocket, the victim's response that three men robbed him is actually a correct answer. The victim's wife, who had walked a short distance away from the men, testified that she could see that there were actually four men involved in the robbery of her husband.
Contrary to the defendant's argument, the couple's description of the weapon that was held to the victim's head was not conflicting. The victim described the gun held to the back of his head as a long black gun. During her trial testimony, Mrs. Froust referred to the weapon once as a gun and twice as a pistol. Neither side asked the two witnesses for a more detailed description of the weapon other than its color. The wife also testified that the pistol was black.
Mrs. Froust testified both on direct and cross-examination that the defendant cocked the gun while he held it to her husband's head. The defendant argues that this detail was too important for the victim to have omitted from his testimony. We note that this information was only an addition, not a contradiction. Further, the witness was subject to cross-examination and the defense had the opportunity to question Mr. Froust in the presence of the jury with regard to his failure to mention this particular detail.
Defendant also asserts that the witnesses gave conflicting testimony with regard to Mrs. Froust's possession of a knife. Testimony concerning the knife was first raised from the defense counsel's cross-examination of the victim.
Q. Now, when did your wife pull out the knife?
A. As far as I know she didn't.
Q. Are you telling me she didn't pull the knife out at anytime that night?
A. As far as I know she didn't.
The victim was the first witness to testify. When Mrs. Froust took the stand, both the state and the defense questioned her about her possession of the knife. In response, Mrs. Froust described how she turned toward one of the men who was approaching her with a gun and held the knife to her side so that the approaching assailant could see it, but not the other assailants. Her testimony explains why her husband did not see her holding the knife. The only other witness in this case, Detective Gilbert, testified on cross-examination and re-direct that during his investigation, Mrs. Froust had not mentioned that she had a knife during the robbery. We note that defense counsel initiated the line of questioning about Mrs. Froust's knife, and was apparently surprised by the victim's testimony that he did not know that his wife had a knife during the robbery. Nonetheless, the jury accepted Mrs. Froust testimony with regard to the issue. The testimony does not indicate that either the victim or the wife was untruthful on this point.
None of the alleged inconsistencies qualify as material contradictions. Since there were two witnesses, the jury could have accepted or disregarded the testimony of either one or both of the witnesses. This court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, supra.
*1166 Moreover, the jury was presented with ample evidence of the defendant's guilt. Both the victim and his wife selected the defendant from a photographic lineup and identified him in court as the person who had held a gun to the victim's head while another person took money from the victim's pocket. Both witnesses testified that the defendant approached them at night while they were walking down the street. They gave similar accounts of how the defendant, a black male, held a gun to the victim's head, a white male held a gun in the victim's back and another black man went through the victim's pocket. Both witnesses also testified that the defendant said words to indicate he would shoot the victim if the couple did not cooperate. Further, as stated above, although the defendant did not admit nor deny his participation in the robbery, he identified the white male accomplice and took the police to that individual's residence.
The jury had the opportunity to listen to the testimony and observe the demeanor of the witnesses during the trial. It obviously chose to believe the couple's testimony. The physical evidence presented also supports the Frousts' testimony. Both witnesses reported that the defendant was wearing a red baseball jersey. They later identified a maroon baseball jersey retrieved from the defendant's residence as the shirt the defendant was wearing during the robbery.
There is nothing in this record to support the defendant's contention that the witnesses' testimony was inconsistent or contradictory with regard to the major elements of the crime or that the physical evidence presented at trial contradicted their testimony. Therefore, this court is bound to uphold the findings of the trier of fact. This assignment of error lacks merit.

Excessive Sentence:
The defendant contends his sentence is constitutionally excessive. The record reflects that the defendant did not plead specific allegations of error in his motion to reconsider his sentence. A motion for reconsideration of sentence must contain a specific ground or grounds upon which the defendant is seeking to have the sentence reconsidered. LSA-C.Cr.P. art. 881.1(D); State v. Barnes, 607 So.2d 872 (La.App. 2d Cir.1992). If the ground for reconsideration is not specifically pleaded, then the defendant is "simply relegated to having the appellate court consider the bare claim of excessiveness." This bare claim preserves only a claim of constitutional excessiveness. State v. Mims, 619 So.2d 1059 (La.1993); State v. Duncan, 30,453 (La.App.2d Cir.2/25/98), 707 So.2d 164.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in LSA-C.Cr.P. art. 894.1. The second inquiry involves a determination of whether the sentence imposed is too severe. This inquiry depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a needless and purposeless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864.
*1167 A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, this court will not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Washington, 29,478 (La.App.2d Cir.4/2/97), 691 So.2d 345.
LSA-R.S. 14:64 provides the penalty for armed robbery and reads as follows:
Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence.
The record shows that the trial court reviewed the PSI prior to the sentencing hearing. The defendant had a 1999 conviction for burglary and was in the process of being placed in a diversion program when he was arrested for the instant offense. Also, the defendant's father made negative comments about defendant's work history. With regard to the prior conviction, the defendant told the court that he was with the wrong crowd.
The trial court also investigated a comment allegedly made by the defendant immediately after his conviction. In a telephone interview conducted by the judge in the presence of the state and defense attorney, the judge spoke to the officer who had transported the defendant back to jail. The officer stated that the defendant said that he wished he had killed the "joker." The defendant responded to the court, "It's a possibility that I could been (sic) talking to the deputy and he misunderstood it thinking I said something like that."
After the sentencing, the defendant's trial attorney objected to the use of the statement. The trial judge ruled that the defendant's comment showed that the defendant did not have any remorse for his actions. Based on a review of the record, we conclude that the trial judge adequately considered the criteria set forth under the statute in sentencing the defendant.
The trial court imposed a lower-range sentence of fifteen years at hard labor without the benefit of parole, probation or suspension of sentence. As quoted above, the sentencing range for this offense is not less than ten years and not more than ninety-nine years at hard labor without benefits. Based on the defendant's criminal and work history and the facts surrounding this offense, including the defendant's threats to the victim at the time of the offense, we find that the trial court did not abuse its discretion in sentencing this defendant. The sentence imposed does not shock the sense of justice. Therefore, the sentence is not constitutionally excessive. This assignment of error is without merit.

CONCLUSION
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.